Next case is Smith v. Department of Veterans Affairs, 2010, 7145. Mr. Barney, good morning. You may proceed.  May it please the Court, when a veteran makes a claim for TDIU, the VA will typically provide a medical examination as part of his duty to assist. And the results of that examination could fall into one of three categories. First, the medical examiner could conclude that the veteran's disabilities are such that they do not preclude him from continuing in his current profession or job. At the other end of the spectrum, the medical examiner could conclude that the veteran's disabilities are so severe that he can't work any job. In either of those two situations, the opinion of the medical expert by itself could provide sufficient evidence for the VA to adjudicate the veteran's claim for TDIU without the need for a vocational surveyor or expert. This case, however, involves the third situation between those two extremes, and it's a situation I like to call the alternative job situation. And that is where the medical expert concludes that the veteran's service-connected disabilities preclude him from working in his current or most recent job. But he may be qualified, medically speaking, to work in some alternative job. And in that particular situation, which is where we find ourselves here, the opinion of the medical expert by itself is not enough. It's not sufficient evidence for the VA to adjudicate the veteran's TDIU claim. And the reason is a medical professional, a doctor, let's say, is simply not qualified, does not have the qualifications to competently provide evidence on several relevant factors. Well, so the theory is the vocational expert would be helpful. And so how do we find that something that might be helpful is compelled by the duty to assist? Your Honor, I would submit that it's beyond just helpful. The types of vocational evidence we're talking about here are driven by the VA's own regulations. So this is consideration of the veteran's education and vocational experience, his job experience, and whether that education and experience actually qualifies him for one of these alternative jobs. Whether the jobs that are being proposed, the alternative jobs, actually exist in sufficient number in the national or local economy. And, and this one's an important one, whether the veteran, if he were engaged in that alternative job, would actually be able to make a living wage. And as just one example, to answer your question, on that third issue, the VA's regulations specifically require on TDIU that the job that's being envisioned for the veteran as a reason for denying his TDIU claim provide a living wage, which is defined as above the poverty level. And a medical doctor doesn't have the qualifications to opine on that. Was the argument made before the CAVC that this, that the failure to provide the vocational expert would be arbitrary and capricious under these? You've outlined three situations, the middle one being the judgment call problem. And was the argument made before the Court of Appeals that to deny it in this context would be unfair, arbitrary, capricious, improper? Your Honor, I don't know whether the words arbitrary and capricious were used, to be honest with you. I know the issue was raised before the CAVC that the duty to assist should require the VA to provide this type of evidence. In this kind of a case? In this category of case. Now, it's true that the opinion of the CAVC sort of overgeneralized what the argument was. We are not, to be clear, we're not suggesting that every single TDIU claim requires this type of evidence. It's a particular type of claim, which I've, again, called the alternative job claim. And I believe that issue was fairly ventilated below, and it's ripe for appeal here. But doesn't the fact that the statute contemplates that under some circumstances the VA must provide a medical examination indicate that when Congress wanted to compel particular kinds of examinations or assistance from something like a vocational expert, they put it in the statute? Your Honor, the statute has several parts to it, but I think the most important part is the first paragraph. It says that the secretary shall make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit. Yes, it's true that there are subsequent provisions in that statute that spell out, at a minimum, the VA must assist in gathering records and must provide a medical examination in certain cases. And it's true that there's no mention of vocational examinations. But that doesn't change the fact that subsection A of 5103 is not limited to any particular type of evidence. It doesn't say medical evidence. The sole criterion in that portion of the statute is whether the evidence is necessary to substantiate the claimant's claim for a benefit. Have we ever said in a case that there's an obligation for the government to provide an expert to assist the veteran? A vocational expert? Well, any kind of expert, other than the medical exam provided in the statute. Your Honor, I'm not aware of a case that this Court has said that. I will note that this issue has arisen several times in the veteran's system, has not yet squarely made its way to this Court. I think this would be a case of first impression. But the obligation, or our obligation, is to interpret what the statute says. And it does not limit. The statute on its face is not limited to medical evidence, although I will concede that is the most common issue that comes before this Court, is the failure or the alleged failure to provide medical evidence. But isn't the question not whether the statute is limited to medical evidence, but whether it mandates a certain type of evidence? Well, as I've said, I don't think it mandates a certain kind of evidence. The sole criteria in Section 5103, Subsection A, is whether the evidence is necessary to substantiate a claim for a benefit. Here, the veteran has put forth a claim for TDIU. And as I've explained, part of the VA's own rules and regulations require the agency to look at things like the veteran's education, the veteran's vocational experience. And again, there's that clear provision in 4.16a that there would be some consideration given to whether the alternative job is going to provide a living wage above the poverty level. And we would submit that that's necessary evidence to adjudicate that claim. Okay. Let's assume we go with your theory. That would impose a duty on the Secretary of State to, in all of these alternative job cases, to bring in a vocational expert. Or equivalent. Do I have that correct? Almost. Or equivalent. Or equivalent. That's sort of like 103, I think that's what you're telling us. I like that. I try not to combine my two fields, Your Honor. Or equivalent. I hadn't seen the equivalent issue before. Okay. How can we be sure, how would we write the opinion to differentiate the alternative job cases from any other cases? I mean, what are the parameters of an alternative job case? Your Honor, if you were to undertake that task, I think the best way to handle this case would not be to set forth some sort of bright line rule or to mandate some particular type of evidence. For instance, a vocational expert or an industrial survey. I think that's best left with the VA. But I think what needs to be corrected here is the position that the Secretary has taken in this case and in previous cases. That there is categorically no duty to assist beyond providing a medical examination. We think that's incorrect. It's not discretionary. That's a little narrow. I think the Secretary understands he or she has a duty to assist in a variety of ways, including the medical record. And they do. They dig up old records. They do a variety of things. As I understand it, you're not suggesting that the only assistance is the medical. I'm suggesting on this issue, Your Honor, on this issue when a veteran, and again, this has come up before, a veteran has, in fact, the VA cited to a general counsel's opinion from about 15 years ago where the issue came up before. So it's something that the VA is aware of that veterans on occasion seek out this type of evidence. And the position that the Secretary has taken and continues to take is that this evidence is essentially discretionary. And that the VA can just decide in its own discretion as to whether or not to order up a vocational survey. And what we are arguing is that you want an opinion from us telling the Secretary to be nice. It's not discretionary under the duty to assist statute. What's not discretionary? If the evidence is deemed necessary, which we would submit it is under the VA's own rules and regulations, there is no discretion. If the veteran needs evidence on whether his education and vocational experience qualifies him for a certain type of job, what are the jobs out in the economy, and will it provide me a living wage, it's the duty of the Secretary to provide that evidence. Be it through a vocational expert or otherwise. But it's left in the discretion of the Secretary as to when that circumstance exists? I would concede that, Your Honor, yes. I mean, there certainly has to be some discretion at the Secretary. But they cannot, as they've done seemingly in all previous cases, categorically say that there is no duty to provide vocational evidence. Because we think there is a duty to provide vocational evidence. When and where, there may be some discretion there. But it can't be categorical. All right. Would you like to reserve your rebuttal time? Yes, Your Honor. All right. Mr. Bruskin. Good morning. May it please the Court. I don't disagree with Your Honor's reading of 5103A in that it does leave to the Secretary the discretion to provide additional assistance above and beyond in cases when it feels it's necessary. But I also would agree with Your Honor's view that where Congress sets forth the specific ways in which the duty to assist should be interpreted by the Secretary, Congress saw fit to only provide those and did not specify or require the Secretary to go above and beyond. The fact is that the — What is the practice? Are there instances in which the Secretary, at the government's expense, provides a vocational expert in these TDIU cases? I'm not aware of any circumstances where they provide a vocational expert. What happens, and you'll see this in some of the cases, is where there's a mental disability being considered, as part of the initial VA rating, where there's a mental disability, they obtain a social and industrial survey, which is, in some instances, a vocational survey, which is, I believe, what Mr. Smith is seeking as the alternative to a vocational expert. The reason they obtain those in the ratings is because the level of social and industrial impairment goes into the evaluation of a mental disability and the percentage compensation to be given. So those are the only circumstances where, when you read the Veterans Court opinions, there is a social survey or an industrial survey. There are no vocational experts who have been brought in to testify on the VA side. If you look at the cases Mr. Smith cites, where the Secretary has obtained one of these surveys, all but one of them involve psychiatric disorders or PTSD. So that's the circumstance. That's the practice of VA that results in an alternative to the vocational expert in a TDIU case. In addition... How would the VA prevent its decisions from being arbitrary without the assistance of appropriate experts? Well, I think it's important to step back and look at what Mr. Smith's counsel said were the necessary factors to be considered. One of the factors he set forth to be considered in a TDIU case is whether there are available jobs in the national economy for the veteran to actually procure. However, what he's citing is a standard from the Social Security regulations. That factor, that question, is not actually required to be asked and is, in fact, not asked in TDIU cases. In TDIU cases, what the Veterans Court has interpreted is that it's important to remember, TDIU is total disability based on individual unemployability, and unemployability is the key term. So what the Veterans Court has said is in TDIU what the board has to look at is whether the veteran is physically and mentally capable of realistically obtaining employment. That's what unemployability means. And the whole veteran... Mr. Barney is arguing that, well, that's a fairly straightforward thing to resolve with the assistance of appropriate medical evidence and experts, but when you're assessing whether the veteran is able to continue to do the kind of work the veteran has been doing, but in concluding that, well, all right, you can't do that kind of work anymore, you're not able to do any heavy lifting, but you're not eligible for TDIU because we think you could do a desk job of some sort. How does the VA make that determination without being entirely arbitrary, without the assistance of some guidance, some testimony? Well, that determination, let's take for instance that they're able to sit for 8 hours to do a desk job, is based upon the physical and mental disability that's affecting the veteran. And it's a key premise of the VA rating system that medical examiners are competent to testify about the effects of a disability on the veteran's ability to engage in normal activities, including the physical and mental activities required of any kind of occupation, sort of a general category of employment. It seems to me that, as I listened to the two of you, that there's a difference in concept here as to what the underlying issue is. On the one hand, it seems to me the VA is saying the question is whether somebody is physically or mentally employable, and that's a medical question, whereas Mr. Barney is saying the question is whether there's a job available out there that somebody could get that would pay him a living wage. I mean, which view of the TDIU test is correct? Well, the Secretary would submit that the test set forth by the Veterans Court, which is simply whether there is a realistic possibility that the veteran could physically and mentally perform the activities required by employment, is the correct test. Mr. Smith's brief could... Any employment. Any employment, correct, whether there's available employment in the national economy or not. Congress in the Social Security Regulation set forth that disability, the term disability, would be defined in part by whether or not there were suitable jobs in sufficient numbers in the national economy. Prior to 1978, administrative law judges in Social Security cases had to consult with vocational experts. Since 1978, they promulgated medical and vocational guidelines, so they no longer need to do that. They go to the guidelines to determine whether there are sufficient numbers of jobs in the national economy. When that doesn't answer the question, they're permitted now by Social Security Regulation to consult with a vocational expert. But even there, they're not required to do so anymore. So we would submit that that's the question that Congress set forth in the Social Security case. Here, the Congress really left it to the discretion of the Secretary to set forth and implement the compensation concept to disabled veterans. So therefore, they set forth the initial VA rating system and set forth this TDIU to fill the gap where someone who isn't initially determined to be 100% disabled physically or mentally by their disability, nonetheless gets 100% disability because they simply are unemployable. Do we have the TDIU regulations in the briefs or the appendix here? I'm not sure that they're in the appendix. They certainly are referenced. It's 38 CFR. I don't know if they're referenced, but they're not quoted. I do believe the eligibility for TDIU is quoted in one of the first footnotes in the Secretary's brief where we set forth what percentage is 60% or 70% depending on the disabilities. I don't know whether or not the language regarding marginal employment, which is also contained in 4.16A, is included. What is the language about marginal employment? The test under TDIU is whether a veteran is able to follow a substantially gainful employment. The Secretary then added years after that was first implemented that substantially gainful employment is not marginal employment, and marginal employment exists when a veteran's earned annual income does not exceed an amount established by the Department of Commerce as the poverty threshold. So that's the additional language in 4.16A, which I don't believe is cited in the Secretary's brief. I think unless the Court has any further questions, we would ask the Court to affirm the decision of the Veterans Corporate Law. All right. Thank you very much. Never a penalty for returning time. Mr. Barney? Just a few things, Your Honor. On the question of which view of the question you asked the government's counsel, the fact is that the standard that's followed by the VA in these cases makes clear that there's a difference between theoretical employability and actual employability. So we would submit that what a physician is capable of doing in an examination is rendering an opinion about theoretical capability, and that's theoretical employment, rather, that this veteran theoretically should be able to sit behind a desk or theoretically should be able to work in jobs that require him to carry less than 30 pounds. That's a very typical type of opinion that a doctor would provide. In Moore v. Derwinski, which we cited in our brief at page 23, blue brief, the VA set forth the standard that it uses in these TDOI cases, and it said that the question must be looked at in a practical manner and mere theoretical ability to engage in substantial gainful employment is not a sufficient basis to deny benefits. The test is whether a particular job is realistically within the physical and mental capabilities of the claimant. Now, that's the VA's own criterion. And by the way, it's one that it borrowed from the Social Security Administration. It came from a case called Timmerman from the Eighth Circuit. So the answer, the full answer to your question... I was just reading from Moore v. Derwinski, one vet app 356, which is cited on page 23 of our blue brief. And the other side of the answer to your question is the VA's regulations, 38 CFR 4.16b, specifically require evidence or at least consideration of the veteran's education and vocational attainment. And so if the only question to be answered was theoretical employment, in other words, whether or not the physical and mental capabilities of the veteran are sufficient that he could theoretically work a job, then why would the regulation require consideration of his education and his employment history? We would submit that these are extra requirements that need to be looked at and they are beyond the expertise of a physician. But the regulations don't say that the general job market needs to be considered, right? Your Honor, the regulations don't specifically say that, although I would submit that the way that the term substantial gainful employment has been defined in the VA cases, which again have borrowed very heavily from the Social Security cases. They tend to follow those cases fairly well. And the reason is that the Social Security is the agency of the government that really has the most expertise on this particular question of unemployability. That's what the Social Security Administration does day in and day out. And so it's not a surprise that the VA over the course of 15 to 20 years has followed much of the case law in the Social Security Administration. The definition of substantial employability, of substantial gainful employment, is employment that is that which is ordinarily followed by the non-disabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides. That's Beatty v. Brown, also cited in our brief, Sixth Vet Act 532. You seem to be suggesting that the Court of Appeals for Veterans Claims is not following its own law. Yes, Your Honor. And there is no discretion in our opinion. Once a regulation has been set forth, once the rules are set forth in the regulations, and once a body of law has been developed as a matter of due process, there is no discretion in arbitrarily deciding when evidence is going to be brought in on certain issues and when it's not. If the evidence is necessary, it must be provided. If they fail to follow their own precedents, is that a question within our jurisdiction? If they fail to apply the statute, which is the duty to assist statute, in support of their own regulations, that is within the jurisdiction, yes, Your Honor. Subject to any further questions? I think I'm done. Thank you very much. We're thankful as counsel. The case is submitted, and that concludes our argument session this morning.